IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| S&M BRANDS, INC. and ) | |
| INTERNATIONAL TOBACCO PARTNERS, ) | |
| LTD., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:05-0171 |
| ) | |
| PAUL G. SUMMERS, in his official capacity as ) | Judge Thomas A. Wiseman, Jr. |
| Attorney General of the State of Tennessee, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Before the Court are cross-Motions for Partial Summary Judgment, one filed by Plaintiffs S&M Brands, Inc. ("S&M") and International Tobacco Partners, Ltd. ("ITP") (collectively, "Plaintiffs") (Doc. No. 85), and the other by Defendant Paul G. Summers, in his official capacity as Attorney General of the State of Tennessee ("Defendant") (Doc. No. 107). The Court recently issued an order and opinion granting in part Defendant's Motion to Dismiss and disposing of all of Plaintiffs' claims in this case except the one at issue here: whether Defendant's allegedly retroactive enforcement of the 2004 amendment to the Allocable Share Release provision, 2004 Pub. Acts. ch. 535, § 1, codified at Tenn. Code Ann. § 47-31-103(a)(2)(B)(ii) (April 20, 2004) ("ASR Amendment"), violates Plaintiffs' constitutional rights and/or Tennessee law.

For the reasons set forth below, the Court will DENY Plaintiffs' Motion (Doc. No. 85) as to S&M's claims, and will GRANT IN PART and DENY IN PART Plaintiffs' Motion as to ITP's claims. Plaintiffs' Motion will be GRANTED insofar as Plaintiffs seek a declaration that Defendant's application of the ASR Amendment to ITP's 2003 escrow release was unconstitutional. Likewise, the Court will GRANT IN PART and DENY IN PART Defendant's Motion (Doc. No. 107). More specifically, Defendant's Motion will be GRANTED as to all claims brought under state law, and GRANTED as to all claims brought by Plaintiff S&M. Defendant's Motion will be GRANTED as to ITP's claim for a release of funds escrowed in connection with 2004 cigarette sales and DENIED as to ITP's claim for a release of funds escrowed in connection with its 2003 cigarette sales.

## II. STANDARD OF REVIEW

Summary judgment, of course, shall be granted when "there is no genuine issue as to any material fact and . . . the non-moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When the evidence is such that no reasonable jury could return a verdict for the nonmoving party, there is no genuine issue of fact. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). If the nonmoving party has failed to produce evidence sufficient to establish an element of his claim, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A summary judgment motion places on the non-movant the burden of producing enough evidence to allow a reasonable factfinder to rule in his favor; a mere "scintilla of evidence" will not suffice. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). The court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. Westfield Ins. Co. v. Tech Dry, Inc., 336 F.3d 503, 506–07 (6th Cir. 2003); Taft Broad. Co., 929 F.2d at 248. Accordingly, when a court denies summary judgment to one party on the ground that it is granting summary judgment to another party, the denial of summary judgment is based on a legal conclusion rather than the district court's finding of a genuine issue of material fact. Black v. Roadway Express, Inc., 297 F.3d 445, 448 (6th Cir. 2002).

## III. FACTUAL BACKGROUND

A detailed and lengthy account of the factual and procedural backdrop to this case was set forth in this Court's October 6, 2005 Memorandum Opinion on Defendant's motion to dismiss the other claims in this case (Doc. No. 105), which the Court incorporates by reference. The Court will also presume familiarity with the abbreviations and acronyms used in the earlier memorandum. Only those facts specifically relevant to resolution of the present motions will be discussed herein. The facts are undisputed unless otherwise indicated.

Tennessee passed the Escrow Act, Tenn. Code Ann. § 47-31-101 *et seq.*, on May 26, 1999. Under Tenn. Code Ann. § 47-31-103(a)(2)(A), NPMs are required to deposit funds annually into an escrow account in an amount based upon the number of cigarettes sold in Tennessee during the year at issue; such funds

2

are to be released from escrow and to revert back to the NPM after twenty-five years, id. § 47-31-103(b)(iii). The Escrow Act as originally passed also provided that each NPM was entitled to an early release of funds from escrow to the extent that the funds on deposit for a given year exceeded the state's allocable share of the total payments that such NMP would have been required to make in that year had it been a PM subject to the MSA. See Tenn. Code Ann. § 47-31-103(a)(2)(B)(ii), Pub. Acts 1999, C. 278 § 4(a)(2)(B)(ii) (repealed) (the "Original ASR Provision").

Much to Plaintiffs' distress, however, Tennessee, along with most of the other Settling States,[1] enacted an amendment to the Escrow Act, effective April 20, 2004, that repealed and replaced the Original ASR Provision. The new ASR Amendment no longer allows an early release of all amounts in excess of the state's allocable share percentage. Instead, it simply permits an early release of any amount paid into escrow that the NPM establishes was in excess of the total amount it would have had to pay under the MSA for the year in question. See 2004 Pub. Acts. ch. 535, § 1, codified at Tenn. Code Ann. § 47-31-103(a)(2)(B)(ii) (2004 Supp.). NPMs who, like Plaintiffs, do not sell cigarettes nationwide, are entitled to the early release of a substantially smaller portion of their escrow payments under the ASR Amendment than under the Original ASR Provision.

There is no dispute that the Escrow Act (pre- and post-Amendment) requires any NPM, for each year during which it sells cigarettes in Tennessee, to deposit the requisite amount into escrow for that year no later than April 15 of the following year. Id. § 47-31-103(a)(2). For instance, the escrow payment for cigarettes sold in 2003 was due no later than April 15, 2004. The escrow payment for cigarettes sold in 2004 was due no later than April 15, 2005. On the other hand, while under both the Original ASR Provision and the ASR Amendment each NPM is entitled to request a refund of the amounts paid into escrow that are in excess of the amount required by the statute, the statute does *not* specify when the request must be made nor how long the State has to grant (or deny) the request.

Notwithstanding, the Defendant has taken the position that if a request for a release was made prior to the April 20, 2004 effective date of the ASR Amendment, then such release would be governed by the Original ASR Provision. Conversely, any request submitted later than April 20, 2004 would be governed by

---

[1] As of April 2005, 42 states had repealed the ASR provision. See http://www.naag.org.

the ASR Amendment. Under this application, S&M was able to receive a release related to its 2003 cigarette sales under the Original ASR Provision because S&M requested the release prior to April 20, 2004. ITP, on the other hand, was refused a release under the Original ASR Provision of the excess funds escrowed on 2003 sales because, according to Defendant, ITP's request was made on April 29, 2004, ten days after the April 19, 2004 effective date, and therefore was subject to the ASR Amendment. (1/14/2005 Decl. of Jeffrey Avo Uvezian ¶ 14; Def.'s Resp. to Pls.' Statement Undisp. Facts (Doc. No. 110) ¶ 14.[2])

Defendant also refused S&M's request dated October 29, 2004 for a release under the Original ASR Provision for cigarette sales that took place between January 1, 2004 and April 19, 2004.[3] Although it is unclear whether ITP ever made a similar request other than in the context of this litigation (see 8/22/2005 Third Decl. of Jeffrey Avo Uvezian (Doc. No. 89) and Attachment A), ITP maintains that it too has also been wrongfully refused a release of excess escrow payments for sales made between January 1, 2004 and April 20, 2004. The basis for Defendant's refusal, again, is that the requests were made after April 19, 2004, and that they are therefore subject to the ASR Amendment even though the cigarette sales for which the escrow deposits were made occurred before the effective date.

## IV. THE PRESENT MOTIONS

In their Motion, both Plaintiffs seek a declaration that Defendant's retroactive application of the ASR Amendment is an unconstitutional violation of their due process rights and that it violates Tennessee law. They seek an order compelling the release of funds held pursuant to such retroactive application of the ASR

---

[2]Mr. Uvezian alleged in his declaration that ITP's counsel requested a refund of its allocable share for 2003 on April 15, 2004, but then stated that Tennessee refused to honor the request because it was made after April 20, 2004. (1/14/2005 Uvezian Decl. ¶ 14.) Defendant states the written request was made on April 29, 2004. (Doc. No. 110, ¶ 14.) Plaintiffs admit that ITP's request for a release for 2003 sales was "received" after April 20, 2004. (Pls.' Resp. to Def.'s Statement Undisp. Facts (Doc. No. 115) ¶ 4.) As far as the Court can ascertain, the record does not include a copy of the actual request, though a spreadsheet showing the amount requested is attached to Mr. Uvezian's January 2005 Declaration.

[3]In their Statement of Undisputed Material Facts, Plaintiffs include a footnote that states, "References to 'PX___' are to the consecutively numbered Exhibits filed by plaintiffs in this action. The October 29, 2004 letter is one such document to which Plaintiffs reference thus. Unfortunately, such reference does not aid the Court in the slightest in locating the various exhibits, as they have been submitted in association with numerous separate filings and declarations submitted over an extended period of time.
Likewise, Defendant's statement, in conjunction with its reference to Idaho v. Parker Tobacco Company, Pvt., No. CV 0309227D (D. Idaho Aug. 26, 2004), that a copy of that opinion was "previously submitted," with no indication when or in conjunction with what other filing, is singularly unhelpful. (See Doc. No. 111, at 3.) The reference to this unpublished case is, consequently, improper.

4

Amendment. (See Doc. No. 85, at 1.) Specifically, S&M seeks a release of $1,650,190,95 held in escrow for sales made between January 1, 2004 and April 19, 2004. (8/22/2005 Decl. of Everett Gee (Doc. No. 88) ¶ 3 and Attachment A). ITP claims it is due a release of excess escrow in the amount of $30,802.80 for 2003 sales, and $22,331.36 for sales made from January 1, 2003 through April 19, 2004, or a total of $53,134.16. (Doc. No. 89, ¶ 4 and Attachment A.) In support of their claims for a release of funds, the Plaintiffs have submitted documentation showing their total national sales of cigarettes during the relevant time period, and submitted declarations from their respective principals attesting to the veracity of summary sheets showing their calculations as to how they figured out how much money should be released from escrow. (See Doc. Nos. 88 and 89, and attached exhibits.)

Defendant, for his part, also moves for partial summary judgment on the issue of whether his application of the ASR Amendment was retroactive without distinguishing between the applicability of the Amendment to sales made in 2003 as opposed to sales made in early 2004. Defendant's position is simply that the Amendment has not been applied retroactively, since by its terms it applies to requests made after the effective date of the Amendment. Defendant fails to address Plaintiff's Due Process argument, and instead asserts that the *Ex Post Facto* Clause of the United States Constitution is not implicated by his application of the ASR Amendment, a defense Plaintiffs did not raise. Defendant also argues, in passing, that he is entitled to summary judgment on ITP's claims because ITP is not a tobacco product manufacturer as that term is defined by the Escrow Act and as such does not have standing to seek a refund in the first place. Defendant does not point to any evidence in support of this argument, and Plaintiffs do not address it at all other than to assert that the Court previously denied Defendant's Motion to Dismiss ITP's claims on the same grounds. Alternatively, Defendant posits, in opposition to Plaintiffs' motion for summary judgment, that genuine issues of material fact preclude summary judgment on the issue of Plaintiffs' entitlement to a release of escrowed funds.

As set forth below, the Court determines that (1) Defendant's motion for summary judgment as to ITP's claims on the basis of lack of standing must be denied; (2) the doctrine of sovereign immunity bars this Court from compelling a state defendant to comply with state law, so Plaintiffs' motion for summary judgment on its claims that Defendant's interpretation and application of the Escrow Act violates Tennessee law must be denied, and Defendant's motion granted in that regard; (3) Defendant did not apply the ASR Amendment

5

retroactively to S&M or to ITP with regard to cigarette sales made during 2004, so Plaintiffs' motion must be denied insofar as it seeks judgment in favor of S&M and ITP specifically for 2004 cigarette sales, and Defendant's motion must be granted in that regard; (4) Plaintiffs are entitled to summary judgment on their claim that Defendant's application of the ASR Amendment to ITP's 2003 escrow release is unconstitutional; and (5) genuine issues of material fact preclude summary judgment as to the amount of the release to which ITP is entitled.

## V. DISCUSSION

### A. Defendant Is Not Entitled to Summary Judgment of ITP's Claims on the Basis of Lack of Standing

As indicated above, one of Defendant's arguments in support of summary judgment is that ITP lacks standing to bring its claims. In that regard, Defendant states that ITP is not a "tobacco product manufacturer" as defined by the Escrow Act, but "is apparently trying to assert a retroactive claim on behalf of Grand Tobacco," a non-party. (Doc. No. 111, at 2.)

Article III, Section 2 of the United States Constitution limits the jurisdiction of federal courts to the resolution of actual "cases" and "controversies." Raines v. Byrd, 521 U.S. 811, 818 (1997); Nat'l Rifle Ass'n of Am. v. Magaw, 132 F.3d 272, 279 (6th Cir. 1997). The case-or-controversy limitation requires a party invoking federal jurisdiction to have standing, that is, a "personal stake in the outcome" of the action. Baker v. Carr, 369 U.S. 186, 204 (1962). To establish a personal stake in the action, a plaintiff must allege an "injury in fact" to his "legally protected interest." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations omitted). The injury must be (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Id. at 560–61. The plaintiff has the burden of showing that it has standing. Id. at 561.

As the party moving for summary judgment, however, a defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). Thus, the defendant's burden "may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Cf. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339 (6th Cir. 1993) (citations omitted). Only after the moving party has

6

met its burden of production does the non-moving party become obligated to present or point to evidence to show that there is a genuine issue for trial. Id.

In this case, Defendant does not point to the existence or absence of any specific evidence to support his conclusory assertion that ITP is attempting to bring suit on behalf of a third party. It is therefore unlikely that Plaintiffs had any obligation to respond to this argument.[4] Regardless, the Court finds that evidence in the record demonstrates there is at least a genuine issue of fact regarding ITP's standing. Specifically, in a Declaration filed in support of Plaintiffs' Motion for Temporary Restraining Order, Jeffrey Uvezian alleged that he is President of ITP and familiar with all of ITP's operations (1/14/05 Uvezian Decl. ¶ 2); that ITP is in the business of importing cigarettes from foreign manufacturers and attempting to re-sell them to wholesalers in the United States, including wholesalers in Tennessee (id. ¶ 3); and that ITP was put out of business as a result of the passage of the ASR Amendment. (Id. ¶ 7.) Mr. Uvezian further asserted that ITP "deposited into escrow the full escrow amount, approximately $3.90 per carton, required by Tennessee law" for cigarettes sold in Tennessee in 2003 and that, because the Original ASR Provision was still in effect at the time, ITP "expected to receive a refund of $30,802.80." (Id. ¶ 13.)

As discussed in this Court's earlier ruling on the Motion to Dismiss, the Escrow Act defines a "tobacco product manufacturer" as an entity that manufacturers cigarettes anywhere in the world with the intent of selling such cigarettes in the United States, *or* as "the first purchaser anywhere for resale in the United States of cigarettes manufactured anywhere that the manufacturer does not intend to be sold in the United States." Tenn. Code Ann. § 47-31-102(9)(A). In other words, an importer such as ITP clearly may be considered a "tobacco product manufacturer" for purposes of the statute so long as it imports cigarettes from manufacturers who do not intend to sell their product in the United States.

Mr. Uvezian did not specify in his Declaration whether the manufacturers from which ITP purchases cigarettes manufacture them with the intent of selling them in the United States. If so, however, the manufacturers and not ITP as the importer would be subject to the Escrow Act, so it is reasonable to infer that ITP purchases from manufacturers who do not intend to sell in the United States. Moreover, Mr. Uvezian

---

[4] If they had been required to do so, Plaintiffs' reference to the Court's treatment of this issue for purposes of Defendant's Motion to Dismiss would not have been sufficient, since "[g]eneral allegations of injury may suffice at the pleading stage, but at summary judgment plaintiffs must set forth specific facts to support their claims." Lujan, 504 U.S. at 561.

alleged that ITP itself deposited funds into escrow for sales of cigarettes in Tennessee during 2003 and that it has been harmed by Defendant's failure to honor a request for a release of a certain portion of those funds. Thus, at the very least, ITP has created a genuine issue of fact as to whether it has standing under the Escrow Act to bring its claims as a tobacco product manufacturer.

Because Defendant did not sustain his burden of production for summary judgment on this ground and because there is sufficient proof in the record to create a genuine issue of material fact, Defendant's Motion for Summary Judgment as to ITP on the grounds of alleged lack of standing must be denied.

### B.     *This Court Is Without Jurisdiction to Enjoin Defendant to Comply With State Law.*

One of the bases for Plaintiffs' Motion for Summary Judgment is that Defendant's allegedly retroactive application of the ASR Amendment violates Tennessee law. This Court, however, is unequivocally barred by the Eleventh Amendment from compelling state officials to comply with state law. See Pennhurst St. Sch. & Hosp. v. Halderman, 465 U.S. 89, 103–06 (1984). In Pennhurst, the Court held that the Eleventh Amendment prohibited a federal district court from ordering state officials to conform their conduct to state law, stating:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

Id. at 106; see also O'Hara v. Wigginton, 24 F.3d 823, 826 (6th Cir. 1994) (dismissing plaintiff's state-law claims and quoting Pennhurst, 465 U.S. at 421, the for proposition that "It is settled that 'a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.' ").

Plaintiffs' motion for judgment as to the state-law claim is therefore denied, and Defendant is entitled to judgment in its favor as a matter of law on that claim.

### C.     Defendant Did Not Apply the ASR Amendment Retroactively With Respect to 2004 Cigarette Sales.

For purposes of the parties' motions, there is apparently no dispute that S&M escrowed a certain amount of funds for cigarettes sold between January 1 and April 19, 2004, and that it sought a release of a portion of those funds under the Original ASR Provision. While it is unclear whether ITP made a similar request outside the context of this litigation, it is undisputed that Defendant maintains that the ASR

8

Amendment applies to all requests for escrow releases made after the April 20, 2004 effective date of the Amendment, regardless of the date of the cigarette sales to which the releases pertain. Plaintiffs argue that Defendant's interpretation of its own obligation under the ASR Amendment constitutes a retroactive application of the statute, and that such retroactive application violates the United States Constitution.

Under federal and Tennessee law, statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise. Nutt v. Champion Int'l Corp., 980 S.W.2d 365, 368 (Tenn. 1998); Sohn v. Waterson, 84 U.S. 596, 598–99 (1873) ("Words in a statute . . . ought not to have a retrospective operation, unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied.") (citations omitted); Spence v. Miles Laboratories, Inc., 810 F. Supp. 952, 958 (E.D. Tenn. 1992) (same). Neither party has argued that the ASR Amendment expressly provides for "retroactive" application. Rather, the issue is whether Defendant has applied the statute retroactively.

The Supreme Court has recognized that, "[w]hile statutory retroactivity has long been disfavored, deciding when a statute operates 'retroactively' is not always a simple or mechanical task." Landgraf v. USI Film Prods., 511 U.S. 244, 268 (1994). Generally speaking, any statute "which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." Id. at 269 (citation omitted). However, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." Id. at 269–70 (citations omitted).

Under the Escrow Act, Plaintiffs were required to deposit into escrow, by or before April 15, 2005, the amount of $.0167539 for each individual cigarette sold in Tennessee during 2004. Tenn. Code Ann. § 47-31-103(a)(2)(A)(iv). Of course, while Plaintiffs had until April 15, 2005 to place funds into escrow for cigarettes sold in Tennessee in 2004, they certainly were not prohibited from placing the funds in escrow in advance of the due date and were not prohibited from placing funds in escrow incrementally throughout the year. Regardless, Plaintiffs' obligation to place a specific sum of money into escrow per cigarette sold was not conditional nor contingent upon any event other than the number of cigarettes sold. That obligation has

9

not been amended since passage of the Escrow Act in 1999.

Despite Plaintiffs' ability to make incremental payments into escrow, the state of Tennessee had no reciprocal obligation to honor incremental requests for releases of funds from escrow. In fact, Defendant's obligation to honor a request from Plaintiffs for a release related to sales in 2004 could not have accrued until January 1, 2005 *at the earliest*. The ASR Amendment states specifically as follows:

> To the extent that a tobacco product manufacturer establishes that the amount it was required to place into escrow on account of units sold in the state *in a particular year was* greater than the master settlement agreement payments, as determined pursuant to § IX(I) of the [MSA] including after final determination of all adjustments, that such manufacturer would have been required to make on account of such units sold had it been a participating manufacturer, the excess shall be released from escrow and revert back to such tobacco product manufacturer. . . .

Tenn. Code Ann. § 47-31-103(a)(2)(B)(ii) (April 20, 2004) (emphasis added). Under this provision, neither Plaintiff would not have been able to calculate its total escrow payments for the year 2004, nor the release amount to which it would be entitled, until *after* its total annual sales for 2004, in Tennessee and elsewhere, were determined and all pertinent "adjustments" made. Consequently, Plaintiffs' right to request a release of funds did not vest until after the end of the year 2004. Id. The Escrow Act does not indicate a date by which Tennessee is required to honor requests for releases of funds, but its obligation to release funds for 2004 to either Plaintiff clearly could not have accrued until after Plaintiffs established the amount of the release to which they were entitled which, again, could not have happened until after the end of the year 2004.[5] See Tenn. Code Ann. § 47-31-103(a)(2)(A).

Plaintiffs nonetheless contend that they are entitled to a release of excess funds escrowed for cigarettes sold in the first four and one-half months of 2004 based upon the Original ASR Provision, and that only sales for the remainder of the year would be subject to the ASR Amendment. This interpretation is not supported by the language of the Original ASR Provision either, as it also required an annual computation before a release of funds could be effected:

> To the extent that a tobacco product manufacturer establishes that the amount it was required to place into escrow *in a particular year* was greater than the state's allocable share of the total payments that such manufacturer would have been required to make *in that year*

---

[5]Even though ITP alleges it stopped selling cigarettes in Tennessee in July 2004, nothing prevented it from continuing to sell in Tennessee and presumably it was still selling cigarettes in other states. Thus, i still would not have been able to establish its total 2004 sales in Tennessee until after the close of 2004. The only potential scenario that might call for a different result would be if an NPM went completely out of business between January 1, 2004 and April 19, 2004, but that situation is not presented here.

10

> under the [MSA] (as determined pursuant to § IX(i)(2) of the [MSA] . . . ) had it been a participating manufacturer, the excess shall be released from escrow and revert back to such tobacco product manufacturer. . . .

Tenn. Code Ann. § 47-31-103(a)(2)(B)(ii) (1999) (repealed) (emphasis added). Nothing in that provision permits or allows for the type of break-down Plaintiffs seek.

Given the language of the provisions at issue, in conjunction with the April 20, 2004 effective date of the ASR Amendment, the Court concludes that Defendant did not apply the ASR Amendment retroactively with respect to S&M's or ITP's 2004 cigarette sales. The ASR Amendment did not impair or affect a vested right, since the Plaintiffs' right to a release did not accrue, or vest, until after they established what their Tennessee sales were for the year 2004. Nor did the Amendment create a new obligation or duty. It merely upset expectations based upon prior law, which does not indicate that it actually operated retroactively. Landgraf, 511 U.S. at 269–70.

In sum, nothing in the Escrow Act required the state of Tennessee to grant a release of excess escrow payments based upon a partial-year's worth of cigarette sales. Defendant did not apply the statute retroactively to either Plaintiff with respect to 2004 cigarette sales. Plaintiffs' Motion for Partial Summary Judgment on their claims related to that time frame will therefore be denied, and Defendant's Motion for Partial Summary Judgment will be granted.

As discussed below, however, the same conclusion is not warranted with respect to ITP's request for a release of funds related to cigarette sales concluded in 2003.

### D. Retroactive Application of the ASR Amendment to ITP's 2003 Cigarette Sales Was a Due-Process Violation.

Under the statute, ITP was required to deposit into escrow the requisite amount for 2003 by or before April 15, 2004. Consequently, its right to a release of any excess funds for 2003 would have vested prior to the April 20, 2004 effective date of the ASR Amendment. Application of the ASR Amendment to 2003 cigarette sales clearly had the effect of attaching a new disability and new legal consequences to a transaction that was completely in the past by the time it went into effect. Cf. Landgraf, 511 U.S. at 269. The Court therefore concludes that the statute was applied retroactively as to ITP's request for a release of excess funds escrowed in connection with ITP's 2003 cigarette sales.

Notwithstanding, the mere fact of retroactivity does not compel a conclusion that such application was unconstitutional. As the Supreme Court recognized in Landgraf, "[t]he Constitution's restrictions . . . are

of limited scope. Absent a violation of one of [the Constitution's] specific provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope. Retroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, correct mistakes, to prevent circumvention of a new statute . . . or simply to give comprehensive effect to a new law Congress considers salutary." Id. at 267–68.

The Due Process Clause is one such specific constitutional provision that "protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application." Landgraf v. USI Film Prods., 511 U.S. 244, 266 (1994) (quoting Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 16 (1976); see also E. Enters. v. Apfel, 524 U.S. 498, 528–29 (1998) ("Our decisions, however, have left open the possibility that legislation might be unconstitutional if it imposes severe retroactive liability on a limited class of parties that could not have anticipated the liability, and the extent of that liability is substantially disproportionate to the parties' experience.").

Due-process analysis is strict, however, as statutes "adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and . . . the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976); Franklin County Convention Facilities Authority v. Am.. Prem. Underwriters, Inc., 240 F.3d 534, 550 (6th Cir. 2001). "[L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. . . . This is true even though the effect of the legislation is to impose a new duty or liability based on past acts." Turner Elkhorn, 428 U.S. at 15 (citations omitted).

In support of their due-process argument, Plaintiffs point out that it is completely nonsensical for S&M to have been able to recover its excess escrow payments for 2003 because it requested the release on April 15, 2004, while ITP was not able to recover a release for sales during the same time frame simply because it submitted its request for a release on April 29, 2004. They also point out that they had no way of anticipating that the Defendant would apply the Amendment retroactively in this fashion, given his past practice of applying the Escrow Act prospectively only.

Defendant ignores Plaintiff's due process argument and fails to posit any rational basis for his

12

decision to apply the ASR Amendment retroactively to ITP. Instead, Defendant argues that the *Ex Post Facto* clause of the United States Constitution has not been violated—an argument that Plaintiffs do not even raise, presumably because the E*x Post Facto* clause applies only to penal statutes. See Landgraf, 511 U.S. at 266 n.19. Accordingly, the Court finds that Defendant's application of the ASR Amendment to ITP's April 29, 2004 request for a release of excess escrow funds related to 2003 cigarette sales was arbitrary and irrational. Defendant's motion for summary judgment as to the constitutionality of the ASR Amendment to ITP's 2003 cigarette sales must be denied, and Plaintiffs are entitled to a declaration that Defendant's retroactive application of the ASR Amendment in that instance was unconstitutional.

The Court nonetheless finds that it must deny Plaintiffs' motion for summary judgment insofar as ITP requests an order that the Defendant release $30,802.80 from escrow in association with its 2003 sales. Defendant does not have any facts to counter ITP's evidence regarding the amount to which it is entitled, but Defendant argues, correctly, that the parties have not yet been permitted to conduct discovery. Defendant therefore has not been able to challenge or independently verify Plaintiffs' calculations. The issue of the amount of ITP's 2003 release therefore remains to be resolved, and the parties will be permitted to conduct limited discovery on that issue.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiffs' motion for partial summary judgment will be denied in part and granted in part, and Defendant's motion for partial summary judgment will be granted in part and denied in part. Specifically, the Court finds that Defendant has violated ITP's due process rights in its application of the ASR Amendment to funds escrowed in connection with ITP's 2003 cigarette sales. The issue of the amount of the release of funds to which ITP is entitled remains to be resolved in further proceedings.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge

13