IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| S&M BRANDS, INC. and<br>INTERNATIONAL TOBACCO PARTNERS,<br>LTD.,<br><br>　　Plaintiffs,<br><br>v.<br><br>PAUL G. SUMMERS, in his official capacity as<br>Attorney General of the State of Tennessee,<br><br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)　Case No. 3:05cv0171<br>)<br>)　Judge Thomas A. Wiseman, Jr.<br>)<br>)<br>) |

**MEMORANDUM**

Before the Court is Defendant's Motion to Stay Judgment (Doc. No. 170), filed in conjunction with a supporting Memorandum of Law (Doc. No. 171). Plaintiff International Tobacco Partners, Ltd. ("ITP") filed its response in opposition to the motion (Doc. No. 178). For the reasons explained below, the motion will be denied.

## I. BACKGROUND

Having previously dismissed all of the Plaintiffs' other claims, the Court granted Plaintiff ITP's motion for partial summary judgment solely as to the issue of whether Defendant Summers' enforcement of the 2004 allocable share release amendment, Tenn. Code Ann. § 47-31-103(a)(2)(B)(ii) (DATE), constituted a retroactive application in violation of ITP's rights under the Due Process Clause. (Doc. No. 122) The Court reserved ruling on the question of the amount of funds improperly withheld. (See Doc. No. 121.) The Court subsequently denied Defendant's Motion for Reconsideration and/or to Alter or Amend Judgment (Doc. No. 159). The parties then stipulated to the amount of funds to be released, while Defendant reserved his right to appeal the Order pertaining to the release of funds. (See Doc. No. 161.). Defendant has filed his Notice of Appeal (Doc. No. 172), and now seeks to stay the judgment requiring it to release to Plaintiff ITP approximately $30,800 held in escrow.

## II. APPLICABLE LEGAL STANDARD

The determination of whether a stay is warranted requires a balancing of the same four factors traditionally considered in determining whether to issue a preliminary injunction: (1) the likelihood that

the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the Court grants the stay; and (4) the public interest in granting the stay. Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991); State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n, 812 F.2d 288, 290 (6th Cir. 1987).

The Court will now consider the applicable factors in light of the facts of this specific case.

**III.    ANALYSIS**

*A.  Likelihood of Success on Appeal*

Although the factors to be considered are the same for both a preliminary injunction and a stay pending appeal, the balancing process is not identical due to the different procedural postures in which each determination arises. Specifically, a motion to stay, unlike a motion for a preliminary injunction, is made after the district court has considered fully the merits of the underlying action and issued judgment. Consequently, it is much more difficult for the movant seeking a stay to demonstrate a likelihood of success on the merits. Mich. Coal, 945 F.2d at 153.

However, because the factors are not prerequisites but, rather, considerations to be balanced, a movant seeking a stay need not demonstrate a high probability of success on the merits. Instead, the "probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other." Id. (citations omitted). Notwithstanding, the movant is always required to demonstrate more than the mere "possibility" of success on the merits. Id. (citation omitted).

Defendant here submits two alternate grounds for reversal of the Court's ruling in favor of ITP on the retroactivity issue: (1) that Defendant's enforcement of the 2004 allocable share release amendment is not an illegal retroactive application; and (2) that ITP does not have standing to pursue a claim for a release of escrow funds in the first place. The Court carefully considered both these issues and does not feel that Defendant has a strong likelihood of success on appeal. Regardless, because these issues were both basically without precedent within or outside the Sixth Circuit, there is a possibility that the Sixth Circuit might disagree. Assuming that there is some likelihood of success

2

on the merits, the Court concludes that it is relatively weak.

### B. Likelihood of Irreparable Harm If the Stay Is Granted

In evaluating the harm that will occur if the stay is or is not granted, courts generally look to three factors: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." Ohio ex rel. Celebrezze, 812 F.2d at 290. In evaluating the degree of injury, it is important to remember that

> [t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Sampson v. Murray, 415 U.S. 61, 90 (1974) (quoting Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958)). Further, the harm alleged must be both certain and immediate, rather than speculative or theoretical, and a movant must provide some evidence that the harm has occurred in the past and is likely to occur again. See Wis. Gas Co. v. Fed. Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985), cited in Mich. Coal., 945 F.2d at 154.

Because the Defendant's likelihood of success on appeal is not strong, as set forth above, he bears the burden of demonstrating a proportionately higher likelihood of irreparable injury if the stay is not granted. The only basis for Defendant's claim of irreparable injury is that Defendant Summers has no regulatory power over ITP, since ITP is not a tobacco product manufacturer subject to the certification requirements for Tennessee's Directory of approved tobacco product manufacturers under Tenn. Code Ann. § 67-4-2601 *et seq.* Thus, Defendant argues, in the event he is successful on appeal and ITP nonetheless fails to return the funds to escrow, Defendant cannot take any regulatory action against ITP and his "enforcement options against ITP [would be] limited at best." (Doc. No. 171, at 5.)

As Plaintiff ITP points out, on the other hand, Defendant's argument that he "may" have no legal recourse against ITP in the event he is successful on appeal, is "speculative [and] theoretical" rather than "certain and immediate." Mich. Coal., 945 F.2d at 154. Nor has Defendant provided "specific facts and affidavits" supporting his assertion of irreparable harm, as the Sixth Circuit has required. See id. (""[I]n order for a reviewing court to adequately consider these four factors, the movant must address

3

each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist.")

The Court finds that Defendant has not demonstrated the possibility of irreparable harm. First, the amount of funds in question is relatively small, less than $31,000. Second, the only harm alleged is economic, and mere economic injury is not considered under the law to be irreparable. Mich. Coal., 945 F.2d at 154 (quoting Va. Petroleum Jobbers Ass'n, 259 F.2d at 925). Moreover, the potential harm to Defendant posed by a release of these funds is purely hypothetical and speculative, since the funds at issue are held in an escrow account in the name of non-party Grand Tobacco, Ltd., and could only be released to the State of Tennessee "[t]o pay a judgment or settlement on any released claim brought against [Grand Tobacco] by the state or any releasing party located or residing in the state." Tenn. Code Ann. § 47-31-103(a)(2)(B)(i). The Court has not been made aware of any pending or potential lawsuit from which such a judgment might be rendered.

In sum: The harm alleged is purely economic; Defendant's risk of incurring the harm is minimal whether we consider the risk of ITP's refusing to pay it back into escrow if it loses on appeal or the risk of the State incurring any actual harm even if ITP did so refuse; and Defendant has failed to provide any evidentiary support for its allegations of irreparable harm. Defendant has not established that this factor weighs in favor of granting the motion to stay, and it certainly does not compensate for the relatively low risk of reversal of the Court's original decision.

### *C. The Risk of Harm to Plaintiff If the Stay Is Granted*

The risk of harm to Plaintiff ITP is likewise slight. Again, the amount of money involved is relatively minimal and, as Defendant points out, it is already held in escrow and accruing interest. In the grand scheme of things, this factor does not weigh strongly either in favor of or against the granting of a stay.

### *D. Public Interest in Granting a Stay*

In addressing this factor, Defendant discusses the purpose of the MSA generally and the establishment of escrow accounts specifically, and the need to ensure that tobacco product manufacturers ("NPMs") who did not participate in the MSA would nonetheless be accountable

4

financially for the healthcare costs to the States caused by the products the NPMs produced and marketed. (See Doc. No. 171, at 7–8.) Defendant argues that the funds will be "jeopardized" if they are disbursed pending appeal, thus frustrating the public interest in keeping the escrow accounts fully funded for payment of future health-related claims. (Id.)

The Court finds this potential injury to be entirely hypothetical as well, as it assumes that ITP will refuse to refund the sums if Defendant wins on appeal and that a lawsuit as contemplated by Tenn. Code Ann. § 47-31-103(a)(2)(B)(i) will be filed and a judgment rendered without there being sufficient funds in escrow to satisfy such a judgment. This factor likewise does not weigh strongly in favor of Defendant.

## IV. CONCLUSION

In balancing the applicable factors, the Court finds that they do not weigh in favor of granting the stay. While Plaintiff ITP would not suffer significant harm if the stay were granted, Defendant Summers has not established a significant likelihood of success on appeal, nor that he would suffer irreparable harm if the stay were granted, nor that the public interest would be significantly affected one way or the other.

Consequently, the Court will deny Defendant's motion to stay.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge

5